David S. Casey, Jr., SBN 60768
*dcasey@cglaw.com*
Gayle M. Blatt, SBN 122048
*gmb@cglaw.com*
Jeremy Robinson, SBN 188325
*jrobinson@cglaw.com*
Wendy M. Behan, SBN 199214
*wbehan@cglaw.com*
Jason C. Evans, SBN 272932
*jevans@cglaw.com*
CASEY GERRY SCHENK
FRANCAVILLA BLATT & PENFIELD LLP
110 Laurel Street
San Diego, California 92101
Tel: (619) 238-1811
Fax: (619) 544-9232

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Patty Irving**, an individual, and **Stacy Hahlen**, an individual, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>**Lumber Liquidators, Inc.,** a Delaware corporation, and Does 1 through 100,<br><br>    Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |

1

Plaintiffs Patty Irving and Stacy Hahlen (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## INTRODUCTION

1. Defendant Lumber Liquidators, Inc. ("Defendant") misrepresents that its laminate flooring products and engineered hardwood flooring products are of the highest quality and safety, saying: "we not only comply with laws – we exceed them,"[1] calling its products the "Highest Quality Flooring. GUARANTEED,"[2] and stating that "as flooring experts we care too much to sell anything but the SAFEST & HIGHEST QUALITY FLORING."[3]

2. Lumber Liquidators' website falsely and deceptively misrepresents that it has affirmatively chosen to comply with California's strict California Air Resources Board's ("CARB") Formaldehyde Emission Standards for its Composite Floors sold and offered for sale nationwide, despite the fact that those products are not compliant. Specifically, Lumber Liquidators' website states that "Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country."[4]

3. Lumber Liquidators falsely claims that "Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified … to meet the CARB standards," and that "The scope of certification includes … that their products conform to the specified regulation limits."[5]

---

[1] http://www.lumberliquidators.com/assets/web/Highest_Quality_Flooring_Guarantee/index.html (last visited on March 10, 2015).
[2] *Id.*
[3] http://www.lumberliquidators.com/ll/home (last visited on March 10, 2015).
[4] *Id.*
[5] http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-regulations (last visited on March 11, 2015).

Class Action Complaint                                    Case No. _____

4. These claims are false. Lumber Liquidators has sold, and continues to sell, various composite wood flooring products which emit formaldehyde in levels that that pose serious health risks to consumers and far exceed the maximum levels allowed by CARB. Lumber Liquidators has knowingly imported and sold various lines of its Chinese-manufactured laminate and engineered wood flooring products that contain unlawfully high levels of formaldehyde, potentially creating unsafe indoor environments in the homes and businesses in which they are installed. In doing so, Defendant has affirmatively mislabeled and falsely advertised these flooring products as safe and compliant with California formaldehyde emission standards.

5. Composite wood flooring products, including laminate and engineered flooring, contain a core of inexpensive pressed wood products, such as medium-density fiberboard or plywood. These wood products are laminated together with adhesives or resins that contain formaldehyde, a known carcinogen regulated under California law. Those core materials are then covered by a thin decorative layer of finish material, either a veneer of wood or printed photograph of wood.

6. While low levels of formaldehyde in composite wood products likely do not pose a significant health risk to people, at higher concentrations, the products emit formaldehyde as a gas or vapor at dangerous levels.

7. Long-term exposure to high concentrations of airborne formaldehyde is known to increase the risk of cancer, including nasopharyngeal cancer, lung cancer, and myeloid leukemia. At lower levels, prolonged exposure can cause respiratory irritation, changes in lung function, asthma, asthma attacks in asthmatic individuals, irritation of the eye, nose, throat, and skin, coughing, wheezing, chest pains, bronchitis, headaches, dizziness, and nausea. While these effects can be experienced by people of all ages, children are at particularly high risk.

8. In 2007, the California Air Resources Board ("CARB") adopted regulations intended to protect public health by setting maximum allowable levels

Class Action Complaint                                        Case No. _____

of formaldehyde emissions from all composite wood products, including laminate and engineered flooring, sold or offered for sale within the State of California.

9.      Under the CARB regulations, all composite wood products must be CARB compliant, and labeled as such, to be legally sold or offered for sale within California.

10.     Lumber Liquidators controls, directs, oversees, manages, and supervises several Chinese mills which produce and manufacture various lines of laminate and engineered flooring products for Lumber Liquidators. Lumber Liquidators packages these products, advertises and labels them as CARB compliant, and distributes them through its 340 retail outlets nationwide, its retail website, and its toll free telephone number.

11.     On information and belief, between October 2013 and December 2014, three accredited and certified laboratories tested more than 150 different boxes of Composite Floors sold by Lumber Liquidators and found that, despite being labeled as CARB compliant, these products averaged between **six and seven times the legal limit** for formaldehyde emissions of composite wood products sold in California, with **up to twenty times** this legal limit found in some products.  These same laboratories tested similar products sold by Lowe's and Home Depot, as well as non-Chinese-manufactured composite flooring sold by Lumber Liquidators, and found that these products' formaldehyde emissions fell within legal limits, and complied with CARB emission standards.

12.     Between October and December 2014, these test results were verified by 60 Minutes news, which conducted its own independent investigation of Lumber Liquidators' Chinese-made Composite Floors.  The 60 Minutes investigation included the testing of 31 boxes of Lumber Liquidators' products purchased from Lumber Liquidators' retail outlets in Virginia, Florida, Texas, Illinois, and New York.  30 out of those 31 boxes, all of which were labeled as

Class Action Complaint                                    Case No. _____

CARB compliant, tested above legal limit of formaldehyde emissions, with some of these tests revealing **more than thirteen times** the legal limit.[6]

13.    Despite these excessive formaldehyde emissions, Lumber Liquidators nevertheless mislabeled, and continues to mislabel, boxes of its Chinese-made composite wood products as "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde." As a part of the 60 Minutes report, undercover reporters sent to three Chinese mills that manufacture Lumber Liquidators' Composite Floors found employees there who openly "admitted falsely labeling the company's laminate flooring as CARB [Phase] 2 [compliant], meaning it meets California formaldehyde emissions standards."[7]

14.    60 Minutes' undercover reporters visiting the three Chinese mills making Lumber Liquidators' Composite Floors also found that "employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price." Representative for all three of the mills that 60 Minutes visited told the undercover investigators that those mills are fully capable of producing CARB compliant composite flooring, only at a higher cost than non-compliant laminate flooring.

15.    Despite Lumber Liquidators' savings of between 10-15 percent off the cost of its Chinese-produced Composite Floors through the use of adhesives in its products that are not CARB compliant, Lumber Liquidators sells those products at the same price for which compliant products are normally sold to consumers by mislabeling and falsely advertising the products.

16.    Instead of providing notice to consumers regarding the risks associated with its Chinese-made Composite Floors' dangerously high

---

[6] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited March 10, 2015).
[7] *Id.*

Class Action Complaint                                        Case No. _____

formaldehyde emission levels, Lumber Liquidators misrepresents and warrants that those products comply with CARB regulations through its packaging and labeling of those products, and lulls consumers into a false sense of security by stating on its website that "we not only comply with laws – we exceed them,"[8] calling its products the "Highest Quality Flooring. GUARANTEED"[9] and stating that "as flooring experts we care too much to sell anything but the SAFEST & HIGHEST QUALITY FLORING."[10]

17. Making matters worse, instead of acknowledging the problems with its products and mitigating their harmful effects, Lumber Liquidators has doubled-down on its deceptive business practices since the 60 Minutes news story aired, updating its website to state that "Lumber Liquidators' products are safe and meet the highest quality and environmental standards,"[11] that "our commitment begins with meeting the most stringent environmental and quality standard,"[12] and ensuring consumers that "our products are safe, [and] meet all governmental requirements."[13]

18. Lumber Liquidators deliberately ignored, and continues to deliberately ignore, its obligations to its consumers and continues to engage in a calculated campaign of misinformation and false advertising to unjustly enrich itself at the expense of its customers' health and safety.  In 2014 alone, Lumber Liquidators' sales are estimated to have exceeded $1,000,000,000.

19. In 2012 and 2013, Plaintiff Stacey Hahlen purchased "12mm Dream Home St. James Vintner's Reserve Laminate Flooring" from Lumber Liquidators

---

[8] http://www.lumberliquidators.com/assets/web/Highest_Quality_Flooring_Guarantee/index.html (last visited on March 10, 2015).
[9] Id.
[10] http://www.lumberliquidators.com/ll/home (last visited on March 10, 2015).
[11] http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=HOME_Safety_Top (last visited on March 10, 2015).
[12] Id.
[13] Id.

Class Action Complaint                              Case No. _____

retail outlets located in Illinois and Wisconsin and installed this product in her Rockford, Illinois residence. "12mm Dream Home St. James Vintner's Reserve Laminate Flooring" is one of the Lumber Liquidators Chinese-manufactured Composite Floors which was found to produce formaldehyde emissions above the CARB limit even though it was labeled as CARB compliant at the time of Plaintiff's purchase.

20.    In 2013, Plaintiff Patty Irving purchased "12mm Ispiri Poplar Forest Oak Laminate Flooring" from a Lumber Liquidators retail outlet located in Santa Rosa, California and installed this product in her Petaluma, California residence. Although the "Ispiri Poplar Forest Oak 12mm Laminate Flooring" is one of the Lumber Liquidators Chinese-manufactured Composite Floors that emits formaldehyde at levels above the CARB limit, it was labeled as CARB compliant at the time of Plaintiff's purchase.

21.    Plaintiffs and members of the Class each paid hundreds or thousands of dollars for composite flooring materials and associated accessory products. Many then paid hundreds or thousands more for labor and other costs to permanently incorporate those products into their homes and businesses only to be burdened by prolonged and constant exposure to a potent carcinogen. Now, these same parties will be forced to either incur additional costs to remove and replace these products, or to suffer diminished property values as a result of required disclosures of the permanent incorporation of these hazardous products into their real property.

## PARTIES

22.    This action is brought by Plaintiffs Patty Irving and Stacy Hahlen on behalf of a class comprising all similarly situated consumers in the United States who purchased one or more of the Chinese-made Composite Floors from the Defendant. Plaintiffs and Class members assert claims against Defendant for

Class Action Complaint                                    Case No. _____

1   violations of The California Unfair Competition Law ("UCL"), violations of The

2   California False Advertising Law ("FAL"), violations of the Consumer Legal

3   Remedies Act ("CLRA"), Breach of Implied Warranty, Breach of Express

4   Warranty, Unjust Enrichment, Deceit by Concealment, Negligent

5   Misrepresentation, Intentional Misrepresentation, violations of the Virginia

6   Consumer Protection Act, and violations of the Illinois Consumer Fraud and

7   Deceptive Business Practices Act.  Plaintiffs and Class Members seek restitution,

8   damages and equitable relief, including disgorgement of profits, and appropriate

9   attorney's fees and costs.

10      23.    Plaintiff Stacy Hahlen is an individual who resides in Winnebago

11  County, Illinois.  She purchased Lumber Liquidators' Chinese-made Composite

12  Floors in 2012 and 2013.

13      24.    Plaintiff Patty Irving is an individual who resides in Sonoma County,

14  California. She purchased Lumber Liquidators' Chinese-made Composite Floors in

15  2013.

16      25.    Defendant Lumber Liquidators, Inc., is a Delaware corporation that

17  has its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

18  Defendant Lumber Liquidators controls, directs, oversees, manages, and/or

19  supervises the manufacturing in China of various lines of Composite Floors,

20  including laminate and engineered flooring. Lumber Liquidators distributes those

21  lines of composite flooring to its 340 retail outlets throughout the United States,

22  including those within the states of California, Illinois, and Virginia.  Through

23  those outlets, along with its website and toll-free telephone number, Lumber

24  Liquidators places these Composite Floors in the stream of commerce throughout

25  the United States, including in California, Illinois, and Virginia. Lumber

26  Liquidators has received, and continues to receive, substantial benefits and income

27  through the sale of Chinese-made Composite Floors.

28

Class Action Complaint                                Case No. _____

26. The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors or their alter egos sued herein as DOES 1 through 100 inclusive are presently unknown to Plaintiffs who therefore sues these defendants by fictitious names. Plaintiffs will seek leave of this Court to amend the complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that DOES 1 through 100 were authorized to do and did business in California and/or Virginia and the United States. Plaintiffs are further informed and believe and thereon on allege that DOES 1 through 100 were or are in some manner or way responsible for and liable to Plaintiffs for the events, happening, and damages hereinafter set forth below.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over the class action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, because the proposed Class consists of 100 or more members, and because minimum diversity exists.

28. This Court has personal jurisdiction over Defendant Lumber Liquidators because it is authorized to do business and does business in this district and has sufficient minimum contacts with this district. Additionally, Defendant Lumber Liquidators intentionally avails itself of the markets in this state through the promotion, marketing and sale of its flooring products in this district. These actions render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

29. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred here, and Defendant regularly does business here. Additionally, venue is proper under Civil Code § 1780(d), and the declaration required by that subsection is attached to this Complaint as Exhibit 1.

Class Action Complaint                                    Case No. _____

1

2     **FACTS COMMON TO ALL CAUSES OF ACTION**

3     **A.    Dangers and Regulation of Airborne Formaldehyde**

4         30.    The United States Environmental Protection Agency, National

5     Academy of Sciences, and International Agency for Research on Cancer have all

6     recognized the carcinogenic effects caused by the inhalation of airborne

7     formaldehyde.

8         31.    In 1992, formaldehyde was designated as a toxic air contaminant by

9     the State of California, with no safe level of exposure. As a result, under state law,

10    CARB was required to take action to reduce human exposure to formaldehyde.

11    CARB's evaluation of how to address this issue found that one of the major sources

12    of formaldehyde exposure is from inhalation of formaldehyde emissions from

13    composite wood products, including laminate and engineered flooring.

14        32.    On April 26, 2007, CARB approved an Airborne Toxic Control

15    Measure to reduce human exposure to formaldehyde emissions from composite

16    wood products.  On April 18, 2008, the Office of Administrative Law approved this

17    Airborne Toxic Control Measure, which was then filed with the Secretary of State

18    and codified as the Formaldehyde Emission Standards under Title 17 of the

19    California Code of Regulations. Cal. Code Regs., tit. 17 § 93120.2.

20        33.    CARB's Formaldehyde Emission Standards, which went into effect

21    on January 1, 2009, were implemented in two phases mandating decreased levels of

22    emissions over time. Cal. Code Regs., tit. 17 § 93120.2(a).

23        34.    The CARB Formaldehyde Emission Standards set maximum

24    allowable formaldehyde emissions from medium-density fiberboard (MDF)

25    composite wood products used in laminate flooring, as well as plywood composite

26    wood products used in engineered flooring.

27        35.    Under Phase 1, effective from January 1, 2009, through December 31,

28    2010, MDF formaldehyde emissions could not exceed 0.21 parts per million

Class Action Complaint                              Case No. _____

("ppm"). Under Phase 2 effective from January 1, 2011, through the present, MDF formaldehyde emissions may not exceed 0.11 ppm. For thin MDF composite wood products (less than 8 millimeters in thickness), Phase 1 effective from January 1, 2009, through December 31, 2011, limited formaldehyde emissions to 0.21 ppm.

36.     Under Phase 2 effective from January 1, 2012, through the present, thin MDF formaldehyde emissions may not exceed 0.13 ppm. For veneer core plywood composite wood products, Phase 1 effective January 1, 2009, through December 31, 2009, limited formaldehyde emissions to 0.08 ppm. Under Phase 2 effective January 1, 2010, through the present, veneer core plywood formaldehyde emissions may not exceed 0.05 ppm. For composite core plywood products, Phase 1 effective July 1, 2009, through June 30, 2012, limited formaldehyde emissions to 0.08 ppm. Under Phase 2 effective July 1, 2012, through the present, composite core plywood products may not exceed 0.05 ppm. Cal. Code Regs., tit. 17 § 93120.2(a). (Hereinafter, CARB emission limits are collectively referred to as "Formaldehyde Emission Standards").

37.     Under CARB's Formaldehyde Emission Standards, only complying materials may be used in finished products which incorporate those materials, regardless of whether the finished products cover or otherwise seal regulated materials within non-regulated materials or finishes.

38.     CARB's Formaldehyde Emission Standards apply to composite wood products including MDF products, which are used in laminate flooring products, and plywood products which are used in engineered flooring products. Cal. Code Regs., tit. 17 § 93120.2(a).

39.     In 2010, President Obama signed the Formaldehyde Standards for Composite Wood Products Act into law. This national regulation is modeled after the CARB Formaldehyde Emission Standards, and seeks to protect the public at the national level from the threat of airborne formaldehyde health risks. The

Class Action Complaint                                    Case No. _____

United States Environmental Protection Agency ("U.S. EPA") has been tasked with implementing regulations through the addition of Title VI to the Toxic Substances Control Act, and is currently in the process of finalizing those regulations.

## B.   Lumber Liquidators' Chinese-made Composite Floors emit dangerous levels of formaldehyde

40.    Lumber Liquidators controls, directs, oversees, manages, and/or supervises several Chinese mills which produce and manufacture various lines of Composite Floors for Lumber Liquidators, including laminate and engineered flooring, that are labeled as CARB compliant. Lumber Liquidators then distributes those products through its 340 retail outlets nationwide. Lumber Liquidators also sells its Chinese-made laminate and engineered flooring products to customers throughout the United States and worldwide through its retail website, and through its toll free telephone number.

41.    Lumber Liquidators lowers its cost, and increases its profit, on Chinese-made laminate flooring products by using less expensive and lower quality adhesives and resins which emit higher levels of airborne formaldehyde than more expensive and higher quality adhesives and resins, which are readily available.

42.    Lumber Liquidators' Chinese-made Composite Floors produce airborne emissions of formaldehyde that exceed CARB Formaldehyde Emission Standards, and in some cases grossly exceed those standards.

43.    Lumber Liquidators' Chinese-made Composite Floors include, among others, the following lines of products:

      i.   8 mm Bristol County Cherry Laminate Flooring;

      ii.   8 mm Dream Home Nirvana French Oak Laminate Flooring;

      iii.   12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

Class Action Complaint            Case No. _____

iv. 12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring;

v. 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

vi. 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

vii. 12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring;

viii. 12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

ix. 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

x. 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

xi. 12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring;

xii. 12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring;

xiii. 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

xiv. 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

xv. 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring;

xvi. 12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring;

xvii. 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

Class Action Complaint                                    Case No. _____

xviii.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

xix.   8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

xx.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

xxi.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

xxii.   12 mm Dream Home St. James Golden Acacia Laminate Flooring;

xxiii.   12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

xxiv.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring;

xxv.   12 mm Dream Home St. James African Mahogany Laminate Flooring;

xxvi.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

xxvii.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

xxviii.   Mayflower 5/16" x 5" Bund Birch Engineered;

xxix.   Other laminate and engineered lines of flooring products not yet ascertained by Plaintiffs and the Class members.

44.   Collectively, these various models will be referred to as the "Composite Floors."

45.   The Lumber Liquidators Composite Floors listed above each contain MDF or Thin MDF wood composite products regulated by CARB Formaldehyde Emission Standards.

Class Action Complaint                                    Case No. _____

46.     Lumber Liquidators offered for sale, sold, and continues to sell the Composite Floors in California, Illinois, Virginia, and throughout the United States.

47.     Lumber Liquidators has mislabeled its Composite Floors as compliant with CARB Formaldehyde Emission Standards when they are not.

48.     Lumber Liquidators has falsely advertised and marketed its Composite Floors as being compliant with CARB Formaldehyde Emission Standards when they are not.

49.     These misrepresentations and omissions are material and were relied upon by all Plaintiffs and Class members who decided to purchase the Composite Floors.

50.     The Lumber Liquidators Composite Floors emit formaldehyde in levels exceeding those permitted under CARB Formaldehyde Emission Standards.

51.     The Lumber Liquidators Composite Floors are produced and manufactured in China using common materials, chemicals, formulas, processes, and/or designs.

52.     Based on the widely recognized and serious health risks associated with formaldehyde emissions, the permanent incorporation of Lumber Liquidators' Chinese-made Composite Floors into structures owned or occupied by consumers raises fears about adverse health consequences. Accordingly, consumers who have already incurred material and labor costs through the purchase and incorporation of these products into those structures, including Plaintiffs and other Class members, can reasonably be expected to incur additional material and labor costs associated with the removal and replacement of these products. In the alternative, required disclosure of these products upon the sale of any property in which they have been incorporated will foreseeably diminish the property value of any structure in which these products have been incorporated and from which they are not removed and replaced.

Class Action Complaint                                    Case No. _____

**C.      Lumber Liquidators Misrepresents the CARB Compliance of its Composite Floors, those Products' Safety, and Quality**

53.      Lumber Liquidators made, and continues to make, material misrepresentations regarding the formaldehyde emissions from its Composite Floors by mislabeling the packaging of these products as compliant with CARB Formaldehyde Emission Standards, even though they are not.

54.      Lumber Liquidators made, and continues to make, material misrepresentations regarding its Composite Floors' compliance with CARB Formaldehyde Emission Standards through false and/or deceptive advertising on its website. .

55.      Lumber Liquidators made, and continues to make, material misrepresentations regarding the safety of its Composite Floors by warranting that they are compliant with CARB Formaldehyde Emission Standards, even though they are not.

56.      Specifically, Lumber Liquidators' website states, under the heading "Is Lumber Liquidators Compliant with the California law?" that "Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified … to meet the CARB standards," and that "The scope of certification includes … that their products conform to the specified regulation limits."[14]

57.      Lumber Liquidators' website falsely and deceptively misrepresents, and warrants, that it has affirmatively chosen to comply with California's strict CARB Formaldehyde Emission Standards for its Composite Floors sold and offered for sale nationwide, despite the fact that those products are not compliant. Specifically, Lumber Liquidators' website states that "Lumber Liquidators made a

---

[14] http://www.lumberliquidators.com/ll/flooring/ca-air-resources-board-regulations (last visited on March 11, 2015).

Class Action Complaint                                    Case No. _____

decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country."[15]

58.     Lumber Liquidators' website falsely and deceptively misrepresents that Lumber Liquidators takes affirmative steps to regularly and independently ensure each of its suppliers' compliance with CARB Formaldehyde Emission Standards for its Composite Floors, despite the fact that those products are not compliant. Specifically, Lumber Liquidators' website states that "Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.  This is done as a monitoring activity to validate ongoing quality control."[16]

59.     Lumber Liquidators' website falsely and deceptively misrepresents, and warrants, that it actually exceeds CARB Formaldehyde Emission Standards. Specifically, after claiming that its Composite Floors comply with CARB Formaldehyde Emission Standards, Lumber Liquidators' letter from its founder and Chairman states that "We take our commitment to safety even further … to provide our customers with top quality and high value flooring."[17]  Lumber Liquidators' website further states that "In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California."[18]

60.     In response to the 60 Minutes exposé of Lumber Liquidators' non-compliant Composite Floors, Lumber Liquidators posted a letter from its founder and Chairman, Tom Sullivan, containing additional false and deceptive misrepresentations, as well as warranties, on its website. Specifically, this letter

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] http://t.lumberliquidators.com/view_question!PAGETYPE?sf=101133&documentid=415037&action=view (last visited on March 11, 2015).

Class Action Complaint                                   Case No. _____

begins: "Let me make one thing very clear – our laminate products, all of our products, are 100% safe."[19] The letter goes on to state that "We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country."[20] These statements were made despite the fact that the Composite Floors are not compliant with CARB Formaldehyde Emission Standards.

61.     Further, all of Lumber Liquidators' Chinese-made Composite Floors carry the following label: "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde."

62.     Lumber Liquidators made, and continues to make, material omissions of fact by failing to inform consumers that its Composite Floors emit dangerous and illegal levels of airborne formaldehyde.

**D.     Lumber Liquidators Knew its Representations about its Composite Floors were False**

63.     At all times relevant to this action, Lumber Liquidators intentionally and knowingly misrepresented to consumers that its Chinese-made Composite Floors were compliant with CARB Formaldehyde Emission Standards, were safe, and were high quality.

64.     At all times relevant to this action, Lumber Liquidators intentionally and knowingly failed to inform consumers of the hazardous and unlawful levels of formaldehyde emissions emanating from its Chinese-made Composite Floors.

65.     Lumber Liquidators has direct knowledge of the compliance, safety, and quality of its Chinese-made Composite Floors because it manages, controls, directs, and oversees the manufacture, production, and quality control of products produced in its Chinese mills. According to its own statements, "[w]e are able to

---

[19] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited on March 10, 2015).
[20] *Id.*

Class Action Complaint                                          Case No. _____

1   set demanding specifications for product quality … our own product quality and

2   assurance teams are on-site at the mills, coordinating inspection and assurance

3   procedures."[21]

4       66.    At the same time that Lumber Liquidators marketed, represented, and

5   warranted to consumers that its Chinese-made Composite Floors complied with

6   CARB Formaldehyde Emission Standards, were safe, and were of high quality,

7   Lumber Liquidators revealed its uncertainty about these representations to the

8   SEC.  Specifically, Lumber Liquidators' SEC filing states that "[w]hile our

9   suppliers agree to operate in compliance with applicable laws and regulations … we

10  cannot guarantee that they comply with such laws and regulations or operate in a

11  legal, ethical and responsible manner … their failure to operate in a legal, ethical

12  and responsible manner could … expose us to legal risks as a result of our purchase

13  of product from non-compliant suppliers."[22]

14      67.    Despite admitted uncertainty as to the quality or compliance of its

15  Chinese-made Composite Floors, Lumber Liquidators continued to market and

16  represent its products as having qualities they did not, namely that they were

17  compliant with CARB Formaldehyde Emission Standards, safe, and of high quality.

18  Such representations, made Class wide were without factual basis.

19      68.    Although it acknowledged that it was aware that products

20  manufactured in its Chinese mills may not be in compliance with CARB

21  Formaldehyde Emission Standards, and that it had the capacity and ability to enact

22  appropriate on-site quality control and assurance over those products, Lumber

23  Liquidators failed to properly protect consumers through those or other measures.

24  Instead Lumber Liquidators continues, to this day, to utilize these same

---

[21] Lumber Liquidators February 19, 2014, SEC 10-K Filing, p. 5, http://investors
.lumberliquidators.com/index.php?o=25&s=127&year=2014 (last visited on March
12, 2015)
[22] *Id.* at p. 14.

Class Action Complaint            Case No. _____

1  manufacturers and sell non-compliant products to consumers in California, Illinois,

2  Virginia, and throughout the United States.

3      69.    A June 20, 2013, news article published on the website *Seeking Alpha*

4  publicly exposed the non-compliant formaldehyde emission levels of a Lumber

5  Liquidators' Chinese-made composite wood flooring product known as Mayflower

6  5/16" x 5" Bund Birch Engineered, which was labeled as CARB compliant.

7  Testing of this product by a certified laboratory found that it emitted three and a

8  half times the legal formaldehyde emissions permissible under CARB

9  Formaldehyde Emission Standards.

10      70.    Following the negative publicity associated with the *Seeking Alpha*

11  article which exposed non-compliant formaldehyde levels in its flooring products,

12  Lumber Liquidators stock price dropped precipitously, prompting a putative

13  federal securities class action lawsuit filed in the Eastern District of Virginia on

14  November 26, 2013. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-

15  cv-00157 (E.D. Va.). Through the course of this lawsuit, which is still pending,

16  Lumber Liquidators was notified of the allegations that its Chinese-made

17  Composite Floors produce formaldehyde emissions in violation of the CARB

18  Formaldehyde Emission Standards.

19      71.    Lumber Liquidators knew, or should have known, based on litigation

20  and widely publicized news articles, that its Chinese-made Composite Floors

21  violate the CARB Formaldehyde Emission Standards for which they are labeled as

22  compliant. Despite its claimed ability and capacity to engage in on-site inspection

23  and quality control and assurance measures at its Chinese mills, Lumber

24  Liquidators failed to properly investigate, evaluate, correct, and mitigate its

25  ongoing violations of the applicable CARB Formaldehyde Emission Standards.

26  Instead, it continues to misrepresent and falsely advertise to consumers that its

27  Chinese-made Composite Floors are compliant with CARB Formaldehyde

28  Emission Standards, are safe, and are of high quality, while selling and offering

Class Action Complaint          Case No. _____

those products for sale in California, Illinois, Virginia, and throughout the United States.

72.    Following the 60 Minutes exposé, Lumber Liquidators' Chief Executive Officer, Rob Lynch, publicly acknowledged that Lumber Liquidators was on notice that its Chinese-made composite flooring failed to meet the CARB Formaldehyde Emission Standards prior to the 60 Minutes story, due to preliminary CARB testing which revealed non-compliant formaldehyde levels in those products.

## PLAINTIFF-SPECIFIC ALLEGATIONS OF FACT

73.    **Stacy Hahlen:**  Plaintiff Stacy Hahlen is a resident of Rockford, Illinois.  In 2012 and 2013, Plaintiff Stacey Hahlen purchased "12mm Dream Home St. James Vintner's Reserve Laminate Flooring" from Lumber Liquidators retail outlets located in Illinois and Wisconsin and installed this product in her Rockford, Illinois residence. "12mm Dream Home St. James Vintner's Reserve Laminate Flooring" is one of the Lumber Liquidators Chinese-manufactured Composite Floors which was found to produce formaldehyde emissions above the legal limit even though it was labeled as CARB compliant at the time of Plaintiff's purchase.

74.    Plaintiff Stacy Hahlen relied on Lumber Liquidators' representations that the Composite Floors were safe and were compliant with CARB emissions requirements. Had she known those representations were not true, she would not have purchased the Composite Floors.

75.    Plaintiff Hahlen did not learn of Lumber Liquidators' misrepresentations or of the dangers associated with its Composite Floors until the airing of the 60 Minutes expose.

76.    **Patty Irving:**  Plaintiff Patty Irving is a resident of Petaluma, California.  In 2013, Plaintiff Patty Irving purchased "12mm Ispiri Poplar Forest Oak Laminate Flooring" from a Lumber Liquidators retail outlet located in

Class Action Complaint                                    Case No. _____

California and installed this product in her Petaluma, California residence. "12mm Ispiri Poplar Forest Oak Laminate Flooring" is one of the Lumber Liquidators Chinese-manufactured Composite Floors which was found to produce formaldehyde emissions above the legal limit even though it was labeled as CARB compliant at the time of Plaintiff's purchase.

77.    Plaintiff Patty Irving relied on Lumber Liquidators' representations that the Composite Floors were safe and were compliant with CARB emissions requirements. Had she known those representations were not true, she would not have purchased the Composite Floors.

78.    Plaintiff Irving did not learn of Lumber Liquidators' misrepresentations or of the dangers associated with its Composite Floors until the airing of the 60 Minutes expose.

## CLASS ACTION ALLEGATIONS

79.    Plaintiffs bring this action pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the members of the following Class:

> All persons in the United States who purchased or had installed in a home, residence, office, or other permanent structure any of Lumber Liquidators' Chinese-made laminate or engineered flooring products labeled as CARB compliant between January 1, 2009, and the present ("Class Period").

80.    Collectively, these persons will be referred to as "Class members" or "the Class." Plaintiffs represent, and are members of, the Class. Excluded from the Class are Defendant and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest, Defendant's officers, agents and employees, the judicial officer to whom this action is assigned and any member of the Court's

Class Action Complaint                                    Case No. _____

staff and immediate families, as well as Class members' claims for personal injury, wrongful death, and emotional distress caused by Defendant's Chinese-made Composite Floors.

81. On information and belief, Plaintiffs do not know the exact number of members in the Class, but reasonably believe that Class members number in the hundreds of thousands, if not millions. As such, Class members are so numerous that joinder of all members is impractical.

82. Well-defined, common legal and factual questions affect all Class members. These common questions predominate over questions that might affect individual Class members. Common questions include but are not limited to whether Defendant's advertising, in any medium, was unfair, deceptive, untrue, or misleading; whether Defendant sold its Chinese-made Composite Floors with knowledge of their non-compliance with CARB Formaldehyde Emission Standards; whether Defendant violated implied and express warranties, and others.

83. Plaintiffs will fairly and adequately represent and protect the interests of all Class members, and Plaintiffs have no interests which are antagonistic to those of Class members. Plaintiffs have retained counsel with experience prosecuting consumer class action and complex litigation claims.

84. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy for the following reasons:

    i. It is economically impractical for members of the Class to prosecute individual actions;

    ii. The Class is readily definable; and

    iii. Prosecution as a class action will eliminate the possibility of repetitious litigation.

85. A class action will cause an orderly and expeditious administration of the claims of the Class.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

Class Action Complaint             Case No. _____

86.     Class wide relief is essential to compel Defendant to comply with California, Illinois, Virginia, and federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action, while significant, are insufficient to warrant the costs associated with individually litigating each claim separately. Management of the claims here is likely to present significantly fewer difficulties than are presented in many class claims because the Chinese-made Composite Floors at issue are a distinct group of individual product lines that are each identical from customer to customer and Defendant's failure to comply with CARB Formaldehyde Emission Standards is identical for each purchaser.

87.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.  Moreover, the violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION

### Violation of the Virginia Consumer Protection Act

### (Va. Code § 59.1–196 *et seq.*)

88.     Plaintiffs re-allege and incorporate by reference the allegations set forth above.

89.     This cause of action is brought pursuant to Virginia Code §§ 59.1-196 *et seq.*, which provides that it is unlawful for any supplier of consumer goods to engage in the followings acts: "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services"; "[m]isrepresenting that goods or services have certain … characteristics, ingredients, uses, or benefits"; "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model"; "[a]dvertising or offering for sale goods that are …

Class Action Complaint                                      Case No. _____

defective … or that are … 'not first class,' without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are … defective … or are … 'not first class'"; "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200.

90.    Defendant is a "supplier" of consumer goods as defined by the Virginia Consumer Protection Act.  Va. Code § 59.1-198.

91.    In its advertising and marketing of the Chinese-made Composite Floors, Defendant makes false and misleading statements that the products are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.

92.    Plaintiffs purchased the Chinese-made Composite Floors that Defendant unfairly, unlawfully, deceptively, and misleadingly represented are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.  In fact, the Chinese-made Composite Floors are none of those things.

93.    Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding the Chinese-made Composite Floors, made to induce the public to purchase the product and to incur additional expenses by permanently incorporating them into real property.

94.    In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the characteristics, ingredients, uses, or benefits of the Chinese-made Composite Floors.

95.    Defendant advertises its Chinese-made Composite Floors and offers those products for sale without clearly and unequivocally indicating in the advertisement or offer for sale that those goods are defective or "not first class."

96.    Defendant's false and misleading representations regarding its Chinese-made Composite Floors are willful, as Defendant is aware that the claims that it makes about the Chinese-made Composite Floors are false and misleading.

Class Action Complaint                                    Case No. _____

97.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

98.   Plaintiffs and Class members were misled and the misrepresentations and omissions were uniform and material.

99.   Plaintiffs and Class members relied upon Defendant's false and misleading representations about its Chinese-made composite flooring in purchasing those products.

100.   Pursuant to Virginia Code § 59.1-204, Plaintiffs and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Chinese-made Composite Floors by claiming those products are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.

101.   Plaintiffs also requests an order awarding Plaintiffs and Class members restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

102.   Plaintiffs have each suffered injury in fact and have lost money as a result of Defendant's false representations.


## SECOND CAUSE OF ACTION

### Breach of Implied Warranty

103.   Plaintiffs re-allege and incorporate by reference the allegations set forth above.

104.   Defendant developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the Chinese-made Composite Floors, in the course of same, directly advertised or marketed the Chinese-made Composite Floors as described above to consumers, including Plaintiffs.

Class Action Complaint                                        Case No. _____

105.   Defendant impliedly warranted its Chinese-made Composite Floors to be of merchantable quality and fit for the common, ordinary, and intended uses for which the product was sold.

106.   Defendant breached its implied warranties for the Chinese-made Composite Floors sold to Plaintiffs and Class members because this product was not fit for its common, ordinary, and intended use.

107.   As a direct, foreseeable and proximate result of Defendant's breaches of implied warranties, Plaintiffs and Class members suffered injury and economic losses when Plaintiffs and Class members purchased the Chinese-made Composite Floors and incurred additional expenses to permanently incorporate them into real property in reasonable reliance upon the implied warranties.

108.   The following statutes reflect states that have enacted provisions of the Uniform Commercial Code governing the implied warranty of merchantability: Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann. §4-2-314; Cal. Com. Code §2314; Colo. Rev. St §4-2-314; Conn. Gen. Stat. Ann. §42a-2-314; 6 Del. C. §2-314; D.C. Code §28:2-314; Fla. Stat. Ann. §672.314; Ga. Code Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; Idaho Code §28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Ind. Code Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kan. Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann. §355.2-314; La. Civ. Code Ann. art. §2520; 11 Me. Rev. Stat. Ann. §2-314; Md. Code Ann. §2-314; Mass. Gen. Laws Ch. 106 §2-314; Mich. Comp. Laws Ann. §440.2314; Minn. Stat. Ann. §336.2-314; Miss. Code Ann. §75-2-314; Mo. Rev. Stat. §400.2-314; Mont. Code Ann. §30-2-314; Nev. Rev. Stat. U.C.0 §104.2314; N.H. Rev. Ann. §382-A:2-314; N.J. Stat. Ann. §12A:2-314; N.M. Stat. Ann. §55-2-314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. Ann. §25-2-314; N.D. Stat §41-02-314; Ohio Rev. Code Ann. §1302.27; Okla. Stat. tit. 12A §2-314; Or. Rev. Stat. §72.3140; 13 Pa. Stat. Ann. §2314; R.I. Gen. Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Stat. §57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2-314;

Class Action Complaint                                    Case No. _____

Utah Code Ann. §70A-2-314; Va. Code §8.2-314; Vt. Stat. Ann. 9A §2-314; W. Va. Code §46-2-314; Wash. Rev. Code §62A 2-314; Wis. Stat. Ann. §402.314, and Wyo. Stat. §34.1-2-314.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

109.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

110.    Defendant developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the Chinese-made Composite Floors, in the course of same, directly advertised or marketed the Chinese-made Composite Floors as described above to consumers, including Plaintiffs.

111.    Defendant expressly warranted that its Chinese-made Composite Floors were compliant with CARB Formaldehyde Emission Standards, safe, and of high quality.

112.    Defendant breached its express warranties for the Chinese-made Composite Floors sold to Plaintiffs and Class members because this product was not compliant with CARB Formaldehyde Emission Standards, safe, or of high quality.

113.    Plaintiffs and Class members reasonably relied upon Defendant's express warranties in purchasing Defendant's Chinese-made Composite Floors and incorporating them into real property.

114.    As a direct, foreseeable and proximate result of Defendant's breaches of express warranties, Plaintiffs and Class members suffered injury and economic losses when Plaintiffs and Class members purchased the Chinese-made Composite Floors and incurred additional expenses to permanently incorporate them into real property in reasonable reliance upon the express warranties.

115.    The following statutes reflect states that have enacted versions of the U.C.C. Code relating to express warranties: Ala. Code 1975 §7-2-313; Alaska Stat. §45.02.313; Ariz. Rev. Stat. §47-2313; Ark. Stat. §4-2-313; Cal. Com. Code §2313; Colo. Rev. Stat. Ann. §4-2-313; Conn. Gen. Stat. Ann. §42a-2-313; 6 Del. C. §2-313; D.C. Stat. §28:2-313; Fla. Stat. Ann. §672.313; Ga. Code Ann. §11-2-313; Haw. Rev. Stat. §490:2-313; Idaho Code §28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. §26-1-2-313; Iowa Code Ann. §554.2313; Kan. Stat. Ann. §84-2-313; Ky. Rev. Stat. Ann. §355.2-313; 11 Me. Rev. Stat. Ann. §2-313; Md. Code Ann. §2-313; Mass. Gen. Laws. Ch. 106 §2-313; Mich. Comp. Laws Ann. §440.2.313; Minn. Stat. Ann. §336.2-313; Miss. Code Ann. §75-2-313; Mo. Rev. Stat. §400.2-313; Mont. Code Ann. §30-2-313; Nev. Rev. Stat. U.C.0 §104.2313; N.H. Rev. Ann. §382-A:2-313; N.J. Stat. Ann. §12A:2-313; N.M. Stat. Ann. §55-2-313; N.Y. U.C.C. Law 2-313; N.C. Gen. Stat. Ann. §25-2-313; N.D. Stat. §41-02-313; Ohio Rev. Code Ann. §1302.26; Okla. Stat. tit. 12A §2-313; Or. Rev. Stat. §72.3130; 13 Pa. Stat. Ann. §2313; R.I. Gen. Laws §6A-2-313; S.C. Code Ann. §36-2-313; S.D. Stat. §57A-2-313; Tenn. Code Ann. §47-2-313; Tex. Bus. & Com. Code Ann. §2-313; Utah Code Ann. §70A-2-48 313; Va. Code §8.2-313; Vt. Stat. Ann. 9A §2- 313; Rev. Code Wash. Ann. §62A.2-313; W. Va. Code §46-2-313; Wis. Stat. Ann §402.313; and Wyo. Stat. §34.1-2-313.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

116.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

117.    Plaintiffs and Class members bring this claim in the alternative to their Breach of Warranty claims.

118.    Defendant knowingly retained a benefit in the form of substantial revenues and payments from Plaintiffs and Class members for the Chinese-made

Class Action Complaint                                    Case No. _____

Composite Floors at the expense of Plaintiffs and Class members from Defendant's conduct and misrepresentations regarding the Chinese-made Composite Floors' compliance with CARB Formaldehyde Emission Standards, safety, and high quality.

119.   Plaintiffs' and Class members' detriment and Defendant's enrichment are traceable to, and resulted directly and proximately from, the conduct challenged in this Complaint. Had Defendant not illegally marketed its Chinese-made Composite Floors, Plaintiffs and Class members would not have paid money to Defendant.

120.   It would be inequitable for Defendant to retain the benefits it received and continues to receive from Plaintiffs and Class members without a payment to Plaintiffs and Class members.

121.   Plaintiffs and Class members may have no adequate other remedy at law.

122.   Plaintiffs and the Class seek disgorgement of and/or a constructive trust on all of the inequitable payments and profits Defendant retained from Plaintiffs and Class members.

## FIFTH CAUSE OF ACTION
### Deceit by Concealment

123.   Plaintiffs re-allege and incorporate by reference the allegations set forth above.

124.   Defendant willfully deceived Plaintiffs and Class members by concealing from them the true facts concerning the Chinese-made laminate flooring products' compliance with CARB Formaldehyde Emission Standards, safety, and quality, which Defendant was obligated to disclose. As set forth above, Defendant knew in advance of Plaintiffs' and Class members' use of the Chinese-made Composite Floors, the lack of the products' compliance with CARB Formaldehyde

Class Action Complaint                              Case No. _____

Emission Standards, hazardousness of the products, and inferior quality of the products.

125.    Defendant concealed and failed to disclose the foregoing facts to Plaintiffs, Class members, and the general public.

126.    As a result of the deceit by concealment by Defendant, Plaintiffs and Class members suffered the injuries and damages set forth above, including the loss of money.

## SIXTH CAUSE OF ACTION
### Negligent Misrepresentation

127.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

128.    Defendant made false misrepresentations, as previously set forth herein, to Plaintiffs, Class members, and the general public, including without limitation, the misrepresentation that the Chinese-made Composite Floors were in compliance with CARB Formaldehyde Emission Standards, were safe, and were of high quality.

129.    Defendant made such representations without reasonable grounds for believing them to be true. These representations were made directly by Defendant and its authorized agents on the Chinese-made Composite Floors' packaging and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Chinese-made Composite Floors.

130.    The foregoing representations by Defendant were in fact false. The Chinese-made Composite Floors are not compliant with CARB Formaldehyde Emission Standards, safe, or of high quality.

131.    The foregoing representations by Defendant were made with the intention of inducing reliance on those misrepresentations so that Plaintiffs, Class

Class Action Complaint                                    Case No. _____

members, and others would purchase the Chinese-made Composite Floors and permanently incorporate them into real property.

132.   In reliance on the above misrepresentations by Defendant, Plaintiffs and Class members were induced to purchase the Chinese-made Composite Floors and permanently incorporate them into real property. If Plaintiffs had known of the true facts and the facts concealed by Defendant, Plaintiffs would not have purchased the Chinese-made Composite Floors nor permanently incorporated them into real property.

133.   Plaintiffs' reliance on the misrepresentations by Defendant was justified and reasonable in that such misrepresentations were made by individuals and entities that held themselves out as experts in composite and other flooring products, and were in a position to know the true facts.

134.   As a result of the negligent misrepresentations by Defendant, Plaintiffs and Class members suffered the injuries and damages set forth above.

## SEVENTH CAUSE OF ACTION
### Intentional Misrepresentation

135.   Plaintiffs repeat and re-allege the foregoing paragraphs, inclusive, and incorporates the same as if set forth herein at length.

136.   Defendant made misrepresentations to Plaintiffs and the Class including that the Chinese-made Composite Floors were in compliance with CARB Formaldehyde Emission Standards, were safe, and were of high quality.

137.   Defendant conducted a sales and marketing campaign to promote the sale of the Chinese-made Composite Floors and to willfully deceive Plaintiffs and the general public as to those products' compliance with CARB Formaldehyde Emission Standards, safety, and quality.

138.   Defendant made the foregoing representations knowing that they were false.  These representations were made directly by Defendant and their authorized

Class Action Complaint                                    Case No. _____

agents, in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase of the Chinese-made Composite Floors and their permanent incorporation into real property.

139.   The foregoing representations by Defendant were in fact false.  The Chinese-made Composite Floors were not compliant with CARB Formaldehyde Emission Standards, were hazardous, and of inferior quality.

140.   The foregoing representations by Defendant were made with the intention of inducing reliance and the purchase of the Chinese-made Composite Floors and their permanent incorporation into real property.

141.   In reliance on the misrepresentations by Defendant, as set forth above, Plaintiffs and the Class were induced to purchase of the Chinese-made Composite Floors and to permanently incorporation into real property.  If Plaintiffs and the Class had known of the true facts and the facts that Defendant concealed, they would not have purchased the Chinese-made Composite Floors nor permanently incorporated them into real property.

142.   Plaintiffs' and Class members' reliance on the intentional misrepresentations by Defendant was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

143.   As a result of the intentional misrepresentations by Defendant, Plaintiffs and Class members suffered the injuries and damages set forth above.

144.   Defendant knew when they made the aforementioned representations that the representations were false.  Defendant intended that Plaintiffs and the Class would reasonably rely on the representations. Plaintiffs and the Class did rely on these representations in purchasing the Chinese-made Composite Floors and in permanently incorporating them into real property, to Plaintiffs' detriment. In this context, the conduct of Defendant constituted malice, oppression, and fraud.

Class Action Complaint                                    Case No. _____

1  Plaintiffs and the class are therefore entitled to recover punitive or exemplary

2  damages.

3

4  ## EIGHTH CAUSE OF ACTION

5  **Unfair and Fraudulent Practices**

6  **(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

7  145.  Plaintiffs re-allege and incorporate by reference the allegations set

8  forth above.

9  146.  This cause of action is brought on behalf of Plaintiffs and members of

10  the general public pursuant to the "unfair" and "fraudulent" prongs of California

11  Business & Professions Code §§ 17200 *et seq*. ("UCL"), which provide that

12  "unfair competition shall mean and include any unlawful, unfair or deceptive

13  business act or practice and unfair, deceptive, untrue or misleading advertising and

14  any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of

15  Division 7 of the Business and Professions Code."

16  147.  As alleged above, Plaintiffs have standing to pursue this claim because

17  each Plaintiff has suffered injury in fact and has lost money or property as a result

18  of Defendant's actions as set forth herein. Specifically, prior to the filing of this

19  action, Plaintiffs purchased Chinese-made Composite Floors that Lumber

20  Liquidators unfairly, unlawfully, deceptively, and misleadingly represented were

21  compliant with CARB Formaldehyde Emission Standards through labeling marked

22  "CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde," as well as through

23  various marketing statements detailed above.

24  148.  In fact, the Defendant's Chinese-made Composite Floors do not

25  comply with CARB Formaldehyde Emission Standards.

26  149.  In its marketing and advertising, Defendant makes false and

27  misleading statements regarding the CARB Formaldehyde Emission Standards

28  compliance, quality, and safety of its Chinese-made Composite Floors.

Class Action Complaint                    Case No. _____

150.    The misrepresentations by Defendant are material facts and constitute an unfair and fraudulent business practice within the meaning of the UCL.

151.    Defendant's business practices, as alleged herein, are unfair and fraudulent because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to the Chinese-made Composite Floors as set forth herein.

152.    Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that the Chinese-made Composite Floors are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality, which they are not.

153.    In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of the UCL.

154.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition because Defendant is marketing and selling its Chinese-made Composite Floors in a manner likely to deceive the public.

155.    Plaintiffs and the putative class members were misled into purchasing the Chinese-made Composite Floors by Defendant's deceptive conduct as alleged above. Plaintiffs and other putative class members were misled because the misrepresentations and omissions were uniform and material.

156.    Pursuant to Bus. & Prof. § 17203, Plaintiffs and the Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale and use of the

Class Action Complaint                                    Case No. _____

Chinese-made Composite Floors. Likewise, Plaintiffs and the Class members seek an order requiring Defendant to cease claiming the Chinese-made Composite Floors comply with CARB Formaldehyde Emission Standards, are safe, and are of high quality,

157.   Plaintiffs also request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of its false and misleading representations.

158.   Plaintiffs have suffered injury in fact and have lost money as a result of Defendant's false and misleading representations.

## NINTH CAUSE OF ACTION
### Unlawful Business Practices
### (California Business & Professions Code §§ 17200 *et seq.*)

159.   Plaintiffs re-allege and incorporate by reference the allegations set forth in this Class Action Complaint.

160.   This cause of action is brought on behalf of Plaintiffs and members of the general public pursuant to the "unlawful" prong of the UCL, which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

161.   As alleged above, Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendant's common actions. Specifically, prior to the filing of this action, Plaintiffs purchased Chinese-made Composite Floors that Lumber Liquidators unfairly, unlawfully, deceptively, and misleadingly represented were compliant with CARB Formaldehyde Emission Standards through labeling marked

Class Action Complaint                                    Case No. _____

"CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde," as well as through various marketing statements detailed above.

162.    Defendant engages in the sale and offering for sale of its Chinese-made Composite Floors within California despite those products not being in compliance with the statutory requirements of CARB Formaldehyde Emission Standards.  Cal. Code Regs., tit. 17 § 93120.2.  Such actions are unlawful business practices.

163.    In its marketing and advertising, Defendant makes false and misleading statements regarding material facts — namely regarding its Chinese-made Composite Floors' compliance CARB Formaldehyde Emission Standards, safety, and high quality — which are unlawful business practices.

164.    Defendant's business practices, as alleged herein, are also unlawful because: (1) they violate sections 1770(a)(2), 1770(a)(3), 1770(a)(5), 1770(a)(7), 1770(a)(9) and 1770(a)(16) of the Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*; and (2) they violate Business & Professions Code § 17500.

165.    Pursuant to Business & Professions Code § 17203, Plaintiffs and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale and use of the Defendant's Chinese-made Composite Floors. Likewise, Plaintiffs and Class members seek an order requiring Defendant to cease claiming the Chinese-made Composite Floors are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.

166.    Plaintiffs also request an order awarding Plaintiffs and Class members restitution of the money wrongfully acquired by Defendant by means of its illegal business practices.

167.    Plaintiffs have each suffered an injury in fact and have lost money or property as a result of Defendant's illegal business practices.

Class Action Complaint                                Case No. _____

### TENTH CAUSE OF ACTION

**False and Misleading Advertising**

**(California Business & Professions Code §§ 17500 *et seq.*)**

168. Plaintiffs re-allege and incorporate by reference the allegations set forth above.

169. This cause of action is brought pursuant to California Business & Professions Code §§ 17500, *et seq.*, which provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

170. In its advertising and marketing of the Chinese-made Composite Floors, Defendant makes false and misleading statements that the products are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.

171. Plaintiffs purchased the Chinese-made Composite Floors that Defendant unfairly, unlawfully, deceptively, and misleadingly represented are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality. In fact, the Chinese-made Composite Floors are none of those things.

Class Action Complaint                                      Case No. _____

172.   Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding the Chinese-made Composite Floors, made to induce the public to purchase the product and to incur additional expenses to permanently incorporate them into real property.

173.   In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the ingredients, characteristics, uses and benefits of the Chinese-made Composite Floors.

174.   Defendant is aware that the claims that it makes about the Chinese-made Composite Floors are false and misleading.

175.   In addition, Defendant's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code §§ 17500, *et seq*.

176.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

177.   Plaintiffs and Class members were misled into purchasing the Chinese-made Composite Floors by Defendant's deceptive conduct as alleged above.

178.   Plaintiffs and Class members were misled and the misrepresentations and omissions were uniform and material.

179.   Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiffs and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of the Chinese-made Composite Floors by claiming those products are compliant with CARB Formaldehyde Emission Standards, are safe, and are of high quality.

180.    Plaintiffs also request an order awarding Plaintiffs and Class members restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

181.    Plaintiffs have each suffered injury in fact and have lost money as a result of Defendant's false representations.

## ELEVENTH CAUSE OF ACTION
### Violations of the Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, e*t. seq.*)

182.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

183.    Each individual Class Member qualifies as a "person" under Cal. Civ. Code § 1761(c).

184.    The Class Members are "consumers," as defined by Cal. Civ. Code § 1761(d).

185.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Defendant has engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et. seq.*, by among other things, representing that the subject Chinese-made Composite Floors have characteristics, uses, benefits, and qualities which they do not have; representing that the subject Chinese-made Composite Floors are compliant with CARB Formaldehyde Emission Standards when they are not, representing that the subject Chinese-made Composite Floors are safe when they are not, and representing that the subject Chinese-made Composite Floors are of high quality when they are not.

186.    In the course of its business, Defendant willfully and/or negligently failed to disclose that the subject Chinese-made Composite Floors are not

Class Action Complaint                                  Case No. _____

compliant with CARB Formaldehyde Emission Standards, are not safe, and are of inferior quality.   Defendant is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.

187.   Defendant knew or should have known that its conduct violated the CLRA.

188.   Defendant made material statements about the subject Chinese-made Composite Floors' compliance with CARB Formaldehyde Emission Standards, safety, quality that were either false or misleading. Defendant engaged in a deceptive trade practice when it failed to disclose material information concerning the subject Chinese-made Composite Floors that it knew at the time of the sale.

189.   The Defendant owed the Class Members a duty to disclose the true lack of compliance with CARB Formaldehyde Emission Standards, hazardousness, and inferior quality of the subject Chinese-made Composite Floors. Failing to do so not only constitutes a deceptive business practice but a serious health risk due to the known and serious adverse health effects of exposure to high levels of formaldehyde emissions.

190.   The Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Class Members, about the true safety, quality, and compliance of the Chinese-made Composite Floors.

191.   At all times herein relevant, Defendant has known about the lack of compliance with CARB Formaldehyde Emission Standards, hazardousness, and inferior quality of the subject Chinese-made Composite Floors.

192.   By failing to disclose the lack of compliance with CARB Formaldehyde Emission Standards, hazardousness, and inferior quality of the subject Chinese-made Composite Floors, and by failing to take corrective action when it was aware of the lack of compliance with CARB Formaldehyde Emission Standards, hazardousness, and inferior quality of the subject Chinese-made

Class Action Complaint                              Case No. _____

1   Composite Floors, Defendant engaged in deceptive business practices prohibited

2   by the CLRA.

3       193.   All members of the Class suffered ascertainable loss caused by the

4   Defendant's failure to disclose material information. The Class Members overpaid

5   for the Chinese-made Composite Floors and received a product that was different

6   than advertised and not what they intended to purchase.

7       194.   The Class Members have been directly damaged by Defendant's

8   misrepresentations, concealment, and non-disclosure of lack of compliance with

9   CARB Formaldehyde Emission Standards, hazardousness, and inferior quality of

10   the subject Chinese-made Composite Floors.

11       195.   Despite being aware of the issue, Defendant has failed to remedy the

12   situation.

13       196.   Under Cal. Civ. Code § 1780(b), the Class members seek an additional

14   award against Defendant of up to $5,000 for each California Class member who

15   qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendant

16   knew or should have known that their conduct was directed to one or more Class

17   members who are senior citizens or disabled persons. Defendant's conduct caused

18   one or more of these senior citizens or disabled persons to suffer a substantial loss

19   of property set aside for retirement or for personal or family care and maintenance,

20   or assets essential to the health or welfare of the senior citizen or disabled person.

21   One or more Class members who are senior citizens or disabled persons are

22   substantially more vulnerable to Defendants conduct because of age, poor health or

23   infirmity, impaired understanding, restricted mobility, or disability, and each of

24   them suffered substantial physical, emotional, or economic damage resulting from

25   Defendant's conduct.

26       197.   Pursuant to Civil Code § 1782, concurrently with the filing of this

27   Complaint, Plaintiffs will notify Defendants in writing by certified mail of the

28   alleged violations of section 1770 and demand that the same be corrected.  If

Class Action Complaint                                    Case No. _____

1  Defendant fails to rectify or agree to rectify the problems associated with the action

2  detailed above within 30 days of the date of written notice pursuant to Civil Code §

3  1782, Plaintiffs will amend this Complaint to add claims for actual, punitive and

4  statutory damages, as appropriate in accordance with Civil Code § 1782(a) & (d).

5

6  ### TWELFTH CAUSE OF ACTION

7  **Violation of the Illinois Consumer Fraud and Deceptive Business Practices**

8  **Act**

9  **(815 ILCS 505/1, *et seq.*)**

10  198.   Plaintiffs re-allege and incorporate by reference the allegations set

11  forth above.

12  199.   Plaintiffs and Class members are consumers as that term is defined by

13  the Illinois Consumer Fraud Act (Ill. Comp. Stat. Ann Chapter 815§ 505/1(e)).

14  200.   Defendant is the designer, manufacturer, promoter, marketer,

15  developer, seller, or distributor of the Composite Floors, and is a "person"

16  engaged in "advertising" and "sale" of those Composite Floors as those terms are

17  defined by the Illinois Consumer Fraud Act (Ill. Comp. Stat. Ann Chapter 815§

18  505/1(a), (c) and (d)).

19  201.   The Composite Floors are "merchandise" as defined by the Illinois

20  Consumer Fraud Act (Ill. Comp. Stat. Ann Chapter 815§ 505/1(b)).

21  202.   The purchase and sale of the Composite Floors is "trade" and

22  "commerce" as defined by the Illinois Consumer Fraud Act (Ill. Comp. Stat. Ann

23  Chapter 815§ 505/1(f)).

24  203.   As alleged more fully above, Defendant committed deceptive trade

25  practices by knowingly making false representations and omitting and concealing

26  material information regarding the Composite Floors' characteristics and alleged

27  benefits and failing to disclose material information regarding known risks,

28  including safety and compliance with CARB regulations, while manufacturing,

Class Action Complaint                              Case No. _____

distributing, and/or selling the Composite Floors for purchase and use by consumers, including Plaintiffs and the Class.

204.   Defendant's actions are deceptive and in clear violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, entitling Plaintiffs and the Class to damages and relief.

205.   Plaintiffs are consumers within the meaning of Illinois' Consumer Fraud and Deceptive Business Practices Act, who were deceptively and unlawfully induced to purchase the Composite Floors by Defendants.

206.   The Illinois Consumer Fraud Act makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

207.   The Illinois Consumer Fraud Act creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

208.   The Illinois Consumer Fraud Act provides that the prevailing party in litigation arising from a cause of action pursuant to the Act shall be entitled to recover monetary damages.

209.   As a result of Defendant's unfair and deceptive trade practices, Plaintiffs and the Class are entitled to monetary recovery.

## **PRAYERS FOR RELIEF**

Wherefore Plaintiffs and the Class pray that judgment be entered against the Defendant for the following relief:

1. Declaring this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23, and for an order certifying this case as a class action and appointing Plaintiffs as the Class representatives;

2. Declaring that the Defendant's advertising and sales of its Chinese-made Composite Floors that are not compliant with CARB Formaldehyde

Class Action Complaint                                    Case No. _____

Emission Standards, safe, and of high quality, was wrongful and misleading;

3. A permanent injunction against Defendant from making any claims that its Chinese-made Composite Floors found to violate the law are compliant with CARB Formaldehyde Emission Standards, safe, or of high quality;

4. Restitution of all purchases of Chinese-made Composite Floors by Plaintiffs and Class members, in an amount to be determined at trial;

5. Disgorgement of all ill-gotten gains Defendant's derived from their misconduct;

6. Actual damages according to proof;

7. Compensatory damages caused by the Defendant's unfair and deceptive practices;

8. Punitive damages as to the Fourth, Tenth, and Twelfth Causes of Action only;

9. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

10. Attorney's fees, costs, and expenses incurred related to bringing this action; and

11. Any additional relief as the Court deems proper.

Dated:   March 16, 2015                     CASEY GERRY SCHENK FRANCAVILLA
                                            BLATT & PENFIELD LLP


                                            s/  Gayle M. Blatt
                                            Gayle M. Blatt, Esq.
                                            *gmb@cglaw.com*

Class Action Complaint                                Case No. _____

1

2                          **DEMAND FOR JURY TRIAL**

3              Plaintiffs demand a jury trial on all issues so triable alleged above.

4    Dated:    March 16, 2015                  CASEY GERRY SCHENK FRANCAVILLA
                                               BLATT & PENFIELD LLP
5

6

7                                              s/   Gayle M. Blatt
                                               Gayle M. Blatt, Esq.
8                                              *gmb@cglaw.com*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint                          Case No. _____